# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

**IN RE YELLOW POPLAR LUMBER COMPANY, INC.,**

Debtor (Bankr. W.D. Va. Ch. 7, Case No. 17-70882).

---

| | |
|---|---|
| **ROBERT W. VON BREMEN, ET AL.,** | |
| Appellants, | Case No. 1:18CV00043 |
| v. | **OPINION** |
| **JOHN M. LAMIE, TRUSTEE,** | By: James P. Jones<br>United States District Judge |
| Appellee. | |

*Robert T. Copeland, Copeland Law Firm, P.C., Abingdon, Virginia, for Appellants; John M. Lamie, Browning, Lamie & Gifford, P.C., Abingdon, Virginia, for Appellee.*

In this appeal from an order of the bankruptcy court, the appellants are unsecured creditors who objected to the trustee's request for approval of their distribution. The bankruptcy case was initially closed in 1931 but was later reopened, and the bankruptcy estate subsequently obtained substantial funds in the settlement of an ownership dispute over natural gas rights. The issue is the amount of interest to be paid on the claims of the unsecured creditors, which, because of the age of the debts, and the now-available bankruptcy estate funds, is

of considerable significance. The creditors argue that the bankruptcy court erred in its determination of the appropriate interest rate, while the appellee, the estate's trustee, contends that the bankruptcy court's interest rate determination was not an abuse of its discretion. For the reasons that follow, I will reverse the bankruptcy court's order.

I.

On July 17, 1928, an involuntary Chapter 7 Bankruptcy petition was filed to have Yellow Poplar Lumbar Company ("Yellow Poplar") adjudged a bankrupt. In 1931, the United States District Court for the Western District of South Carolina adjudged Yellow Poplar a bankrupt and closed the case.

In 2013, a dispute arose regarding the current ownership of natural gas estates in Virginia, which Yellow Poplar had owned prior to the bankruptcy, leading to a lawsuit in this court. The Yellow Poplar bankruptcy case was reopened by the South Carolina court and transferred to this court, where John M. Lamie was appointed substitute Trustee and made a party to the pending civil action. The parties to the dispute settled the ownership case in 2017. Pursuant to the settlement, the Yellow Poplar estate received approximately $2 million from escrowed gas royalties. Additionally, the gas wells continue to produce and generate revenue for the Yellow Poplar estate. To administer and distribute these

new funds, Yellow Poplar's 1928 bankruptcy case was referred to the Bankruptcy Court for the Western District of Virginia.

In response to the Trustee's motion for approval of distribution to the unsecured creditors, the bankruptcy court ordered the Trustee, and any other interested party who wished, to submit argument addressing whether Yellow Poplar's original creditors, and their existing heirs or successors in interest, should receive interest on any distribution, and if so, what interest rate should be used. In response, the Trustee proposed making distributions with an interest rate of 2.4%, which it determined by calculating the one-year rate of U.S. Treasury bills as of November 10, 1930, when the initial bankruptcy trustee had been released from his duties. Daniel von Bremen and Willie Johnson, heirs of two of Yellow Poplar's original unsecured creditors, filed objections to the Trustee's proposed interest rate. After a hearing on the Trustee's proposal and the objections to it, the bankruptcy court found that distributions should be made with interest; the interest should be paid at the federal judgment rate; and in this case, that rate should be 3.6%, which the court determined by calculating the one-year rate of U.S. Treasury bills as of July 17, 1928, when the initial bankruptcy petition was filed. The bankruptcy court did not provide for compounding the interest.[1]

---

[1] According to the parties, the bankruptcy estate currently has on hand the sum of $2,012,424.54. Lamie Letter, Mar. 1, 2019, ECF No. 9. Applying the bankruptcy court's uncompounded interest rate, but from November 10, 1930, which date the Trustee

Thereafter, Von Bremen and Johnson filed the present appeal, challenging the bankruptcy court's method of determining the appropriate federal judgment rate in this case. The appeal has been fully briefed and orally argued and is now ripe for decision.[2]

II.

The parties first disagree as to the appropriate standard of review in this appeal. Von Bremen and Johnson assert that the bankruptcy court's decision was a legal conclusion that should be reviewed de novo, while the Trustee contends that abuse of discretion review should apply.

In appeals of bankruptcy court decisions, district courts review the bankruptcy court's legal conclusions de novo and factual findings for clear error. *Goldman v. Capital City Mortg. Corp. (In re Nieves)*, 648 F.3d 232, 237 (4th Cir. 2011). However, decisions committed to the discretion of the bankruptcy court are reviewed for abuse of discretion. *Robbins v. Robbins (In re Robbins)*, 964 F. 2d 342, 345 (4th Cir. 1992). Under abuse of discretion review, the district court will not reverse the bankruptcy court unless its conclusion was guided by erroneous legal principles or rests upon a clearly erroneous factual finding. *Mack v. Yankah*

---

originally proposed, would produce interest of $426,221.77. *Id.* at ECF No. 9-1. The appellees seek interest of $997,470.23. Copeland Letter, Mar. 1, 2019, ECF No. 10.

[2] This court has subject-matter jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a).

(*In re Yankah*), 514 B.R. 159, 163 (Bankr. E.D. Va. 2014). "However, even if the bankruptcy court applies the proper legal principles to supported facts, the district court may reverse if it holds a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.* at 163-64.[3]

When a bankruptcy court rules in equity, abuse of discretion review applies to its balancing of the equities. *Massenburg v. Schlossberg* (*In re Massenburg*), 554 B.R. 769, 773 (Bankr. D. Md. 2016). As discussed in greater detail below, "it is manifest that the touchstone of each decision on allowance of interest in bankruptcy . . . has been a balance of equities between creditor and creditor or between creditors and the debtor." *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 165 (1946). Although the bankruptcy court ultimately used a version of the federal judgment statute to determine an appropriate interest rate, its decision to do so stemmed from its balancing of the equities rather than a statutory directive. Accordingly, I will apply abuse of discretion review in this case.

## III.

The parties do not dispute the bankruptcy court's decision to pay distributions with interest or to pay the interest at the federal judgment rate. Instead, they disagree as to how to determine the appropriate federal judgment rate

---

[3] I have omitted internal quotation marks and alterations throughout this opinion, unless otherwise noted.

to apply in this case. The bankruptcy court applied the federal judgment statute as it stood between 1982 and 2000 in light of the unique circumstances of this case. Von Bremen and Johnson argue that the statute as it stood in 1928, the year the original bankruptcy petition was filed, should apply. In the alternative, they argue that if the court finds that the more recent version of the statute applies, it should apply the entire statute so that interest is compounded on an annual basis.[4] On appeal, the Trustee does not dispute the bankruptcy court's determination of the appropriate federal judgment rate.

Under the Bankruptcy Act of 1898,[5] "[t]he general rule in bankruptcy . . . ha[d] been that interest on the debtors' obligations ceases to accrue at the

---

[4] Von Bremen and Johnson also argue that the bankruptcy court should have used its equitable powers to shape a remedy that would pay the creditors the present value of their 1928 claims. However, they ultimately state that "there is no authority that would support this theory in the jurisprudence." Br. of Appellants 6, ECF No. 5. The Trustee's response does not address this argument. The bankruptcy court considered and rejected this approach because it would require the Trustee to distribute nearly all the estate's currently held funds to unsecured creditors. I find that this decision was not an abuse of discretion.

[5] The Bankruptcy Reform Act, which was passed in 1978 and enacted the present Bankruptcy Code, provides that:

> A case commenced under the Bankruptcy Act [of 1898] and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this [Bankruptcy Reform] Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.

beginning of proceedings." *Vanston*, 329 U.S. at 163. However, post-petition interest could be awarded in three exceptional circumstances: (1) the debtor claiming bankruptcy protection later proves to be solvent, (2) the property of the debtor continues to earn money, or (3) the debt is not one discharged by bankruptcy. *N.S.C. Contractors, Inc. v. Twin Peaks Ltd. P'ship* (*In re Twin Peaks Ltd. P'ship*), 720 F.2d 1374, 1377 (4th Cir. 1983). "It is manifest that the touchstone of each decision on allowance of interest in bankruptcy . . . has been a balance of equities between creditor and creditor or between creditors and the debtor." *Vanston*, 329 U.S. at 165. However, "[t]he scale balancing the equities . . . is overwhelmingly tilted toward restoring the creditor to as near a position as the creditor would have occupied absent bankruptcy before benefitting the Debtors with surplus funds." *In re Beck*, 128 B.R. 571, 573 (Bankr. E.D. Okla. 1991). This is because the debtor has already received the benefit of a bankruptcy discharge and "should not be permitted to overextend the 'fresh start' concept to unrecognizable bounds." *Id.*

In this case, the bankruptcy court determined that equity allows Yellow Poplar's creditors to receive post-petition interest on their claims up to the date of distribution. The court then turned to the interest rate that should apply. The court

---

Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, § 403(a), 92 Stat. 2549, 2683 (1978). Thus, when a bankruptcy case commenced under the Bankruptcy Act of 1898 is reopened, that Act will continue to apply to it. *E.g., In re Dunning Bros. Co.*, 410 B.R. 877, 883 (Bankr. E.D. Cal. 2009).

recognized that post-petition interest could be awarded at a rate contracted for by the parties, at a specialized statutory rate, or at a state judgment rate. However, it also noted that contract rates or state laws may provide for different rates for equally situated creditors, which could create inequitable results. Accordingly, the court found that the federal judgment rate would provide the most equitable result in this case. The court also cited *In re Melenyzer*, which held that "the federal judgment rate selected should be that in effect as of the date of filing, as opposed to the date of distribution." 143 B.R. 829, 833 (Bankr. W.D. Tex. 1992).

As of the date of the bankruptcy filing in this case, the federal judgment statute provided that:

> Interest shall be allowed on all judgments in civil causes, recovered in a circuit or district court, and may be levied by the marshal under process of execution issued thereon, in all cases where, by the law of the State in which such court is held, interest may be levied under process of execution on judgments recovered in the courts of such State; and it shall be calculated from the date of the judgment, at such rate as is allowed by law on judgments recovered in the courts of such State.

R.S. § 966; Mar. 3, 1911, ch. 231, § 291, 36 Stat. 1167. Von Bremen and Johnson argue that in light of this statute, South Carolina's judgment rate in 1928, which was 7%, should apply in this case. However, the bankruptcy court declined to apply this statute because it found that its reference to a state-law rate had the potential to create an inequitable distribution. To avoid this issue, the bankruptcy

court instead applied the federal judgment statute enacted in 1948, which was revised in 1982 to provide that:

> [I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

28 U.S.C. § 1961(a) (amended 2000). Pursuant to this version of the federal judgment statute, the bankruptcy court determined that the appropriate interest rate in this case is 3.6% — the one-year rate of U.S. Treasury bills as of July 17, 1928. The court did not allow for compounding interest, although 28 U.S.C. § 1961(b) states that interest shall be compounded annually.

I find that, in light of the equities in this case, the bankruptcy court's decision to apply this more recent version of the federal judgment statute was error. When the court in *In re Melenyzer* concluded that the federal judgment rate in effect as of the date of the bankruptcy petition should apply, it did so based on "the legal fiction that, but for the bankruptcy, creditors could have pursued their remedies against the debtor and had their money on the date of the filing." 143 B.R. at 833 n.4. This legal fiction also underlies the directive in *In re Beck* to restore the creditor to as near a position as it would have occupied absent bankruptcy before benefitting the debtor when the debtor later proves to be solvent. Thus, I find that the 1928 federal judgment statute should apply in order to restore

Von Bremen and Johnson to the position they would have occupied absent the bankruptcy proceeding. I also note that although the 1928 federal judgment statute points to applying a state law rate, it does not implicate the bankruptcy court's concerns regarding different rates for equally situated creditors because it directs that the same state judgment rate be applied to all creditors. Lastly, applying an interest rate of 7% rather than 3.6% is not inequitable in this case. Doing so does not exhaust the estate's surplus, and it reflects the initial expectations of both the creditors, who made loans with the expectation that they would be fully repaid, and the debtor's shareholders, who invested for better or worse. Accordingly, the 1928 federal judgment statute should apply here, and thus the 1928 South Carolina judgment rate of 7% is the appropriate interest rate in this case. I find that the bankruptcy court did not err in declining to order the compounding of interest.

IV.

For the foregoing reasons, the order of the bankruptcy court will be reversed and the matter will be remanded for further proceedings consistent with this Opinion.

A separate judgment will be entered herewith.

DATED: March 15, 2019

/s/ James P. Jones
United States District Judge